COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* SAMUEL
WILLISTON
(and a companion case between the same parties).

Suffolk.   November 13, 1939. — March 27, 1944.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Taxation,* Income tax.   *Words,* "Received."

An inhabitant of Massachusetts, the owner of a corporate bond having
negotiable interest coupons payable to bearer which, before their
maturity, he detached from the bond and delivered as a completed and
valid gift to his daughter, who collected the interest represented by
them at their maturity, received nothing of a pecuniary or economic
benefit in the circumstances and was not subject to an income tax
on such interest under G. L. (Ter. Ed.) c. 62, § 1.

APPEAL from a decision by the Appellate Tax Board.

*E. O. Proctor,* Assistant Attorney General, for the com-
missioner of corporations and taxation.

*A. H. W. Higgins,* (*C. D. Post* with him,) for the taxpayer.

RONAN, J.   The taxpayer, a resident of this Common-
wealth and the owner of certain corporate bonds, detached
the interest coupons and made a gift of them about Christ-
mas time in 1934 to his daughter, a married woman living
with her husband in the State of New York.   These coupons
were payable to bearer and matured in 1935.   In December,
1935, he made a similar gift to her of coupons payable in 1936.
The transfer of these coupons was disclosed by the taxpayer in
the returns filed by him in 1936 and 1937.   The commis-
sioner of corporations and taxation assessed a tax for each
of these two years upon the amount of interest represented
by the coupons collected in 1935 and in 1936, respectively,
as income received by the taxpayer.   It is conceded that
each delivery of the coupons constituted a valid gift, and
it is not disputed that the interest was collected by the
donee.   The commissioner appealed from a decision of the
Appellate Tax Board granting an abatement of the taxes

upon the amount of interest paid at the maturity of these coupons.

The statute, G. L. (Ter. Ed.) c. 62, § 1, in so far as material, provides that "Income of the classes described . . . received by any inhabitant of the commonwealth during the preceding calendar year, shall be taxed . . .." One of the classes of income described in this statute is interest from bonds, except those of the United States and certain bonds of the Commonwealth and of political subdivisions thereof. The coupons represented the regular periodical payments of sums of money which were to be paid by the company for the use of the money lent to it as evidenced by the bond, and the amount paid upon the surrender of the coupons was compensation or interest upon principal. The interest so received was income from bonds and was income of a nature that was expressly made subject to the income tax. *Sayles* v. *Commissioner of Corporations & Taxation*, 286 Mass. 102. *Nichols* v. *Commissioner of Corporations & Taxation*, 314 Mass. 285.

Even if the income was of a taxable nature, the taxpayer was not subject to the tax unless it was received by him within the meaning of the statute. The word "received" appearing in the statute must be interpreted by giving the word its ordinary and general meaning, determined by the context and the purpose to be accomplished by the enactment.

There must be the receipt of money or something else of value which may be fairly construed as income which came to the taxpayer as the result of the transfer of the coupons. Income from the beginning of our present taxing system has been understood to denote the true increase in wealth that a person acquires during a calendar year, *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 526; *Brown* v. *Commissioner of Corporations & Taxation*, 242 Mass. 242, 244; *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 80; *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296, but generally the mere increment in the value of property is not regarded as income until the increase in value is actually realized by a

sale of the property or by separating the increase from the property and converting it into something having an exchangeable value which the taxpayer can use for his own benefit and enjoyment. *Van Heusen* v. *Commissioner of Corporations & Taxation*, 257 Mass. 488. *Crocker* v. *Commissioner of Corporations & Taxation*, 280 Mass. 238. *Commissioner of Corporations & Taxation* v. *Filoon*, 310 Mass. 374, 385.

The coupons were promises to pay interest and until detached from the bond represented an additional value to the bond. These interest coupons were negotiable instruments, title to which passed by delivery. The taxpayer parted with all right and title in them when he gave them to his daughter and she became the sole owner of them free from any control of them by her father. He thereafter possessed no power to stop payment at maturity or to deflect their payment to some one other than his transferee. *Spooner* v. *Holmes*, 102 Mass. 503. *Pratt* v. *Higginson*, 230 Mass. 256. *Fidelity & Deposit Co.* v. *Taunton*, 303 Mass. 176. *Betts* v. *Massachusetts Cities Realty Co.* 304 Mass. 117. *Clark* v. *Iowa City*, 20 Wall. 583. *Hartman* v. *Greenhow*, 102 U. S. 672. *Koshkonong* v. *Burton*, 104 U. S. 668. Such a transfer is distinguishable from the assignment of a chose in action where the assignor retains the power of virtually destroying the force and effect of the assignment by preventing the subject matter of the assignment from ever reaching the stage where it is to become due and payable to the assignee. *Lucas* v. *Earl*, 281 U. S. 111. *Burnet* v. *Leininger*, 285 U. S. 136. We do not think that the retention by the taxpayer of the bonds which were the source of the income in the form of interest can operate to make the income his after he has irrevocably parted with the coupons and his transferee thereby alone became entitled to the interest. It would be strange, for instance, if a tax for the interest received by the daughter could, if her father sold the bonds after the coupons had been detached, be imposed upon the purchaser or other person who happened to be holding the bonds at the time the interest was collected by her as her sole property. It has been said that liability for

income tax attaches to the ownership of the income. *Blair v. Commissioner of Internal Revenue*, 300 U. S. 5. See *Helvering v. Stuart*, 317 U. S. 154.

The commissioner contends that, in the absence of proof of an actual receipt of income by a taxpayer, a constructive receipt may be proved and this will be sufficient to support the levy of the tax. Liability to a tax can be supported only upon a solid foundation of facts sufficient to bring the case within the scope of the taxing statute. It must rest upon something more than a well turned phrase or a convenient label. Taxing statutes are to be strictly construed, and if the right to tax is not plainly conferred then such a right is not to be implied, *Coolidge v. Commissioner of Corporations & Taxation*, 268 Mass. 443; *DeBlois v. Commissioner of Corporations & Taxation*, 276 Mass. 437, and the meaning of a constructive receipt so called must be limited to keep it consonant with this general principle governing the interpretation of taxing laws. A constructive receipt of income, we think, cannot be held to be the equivalent of an actual receipt, unless it can be seen that the taxpayer enjoys substantially the same material and objective benefits from the constructive receipt that he would enjoy if the income were paid directly to him or at least that he receives some economic or tangible advantage therefrom. The familiar example of such a constructive receipt is the application of the income or a part of it, with the consent of the taxpayer, by the person from whom it is due, to the discharge of some legal obligation owed by the taxpayer to a third person. *Commissioner of Corporations & Taxation v. Dalton*, 304 Mass. 147. *Commissioner of Corporations & Taxation v. Thayer*, 314 Mass. 375. *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U. S. 716. *United States v. Hendler*, 303 U. S. 564. *United States v. Joliet & Chicago Railroad*, 315 U. S. 44. The discharge of an indebtedness is an economic benefit to the taxpayer and the result to him is the same as if the income was paid to him and he expended it in payment of his indebtedness. In the present cases the transfer of the coupons was a mere gratuity. The taxpayer did not thereby obtain any economic benefit. He received

nothing for the coupons except the personal gratification of being able to aid and assist his married daughter. That is not an exchange for money or for money's worth or for anything of economic value. The law cannot value such a mental condition. See *Sullivan* v. *Old Colony Street Railway*, 197 Mass. 512; *Wheeler* v. *Balestri*, 304 Mass. 257.

The taxpayer got nothing that can be said to have any pecuniary or financial value, and it would seem to be paradoxical to contend that by giving away his property a man acquires an increase in his economic wealth. The reverse would seem to be true. We are unable to see how any taxable benefit resulted to the taxpayer from the gifts of these coupons to his daughter.

We are aware that the conclusion we have reached is contrary to *Helvering* v. *Horst*, 311 U. S. 112, and cases following it. It was there held that the collection by a son in his own behalf and for his own benefit of interest coupons which were given to him by his father was income taxable to the father. It is impossible always to avoid a divergence of view. No Federal question is presented in the instant cases. This decision is based upon our construction of one of our taxing statutes and the decisions of this court are final upon such matters. *Lanning* v. *Tax Commissioner*, 247 Mass. 496, 498. *Brink* v. *Commissioner of Corporations & Taxation*, 299 Mass. 280, 285. *Commissioner of Corporations & Taxation* v. *Morgan*, 306 Mass. 305, 311. *Anderson* v. *Commissioner of Corporations & Taxation*, 312 'Mass. 40. We are not bound by the *Horst* case, though it is entitled to due deference and respect. We are, however, bound by our own decisions, and we cannot·bring ourselves to believe that the satisfaction derived by a parent from making a gift to a child can be said to result in a benefit of such nature as to make the parent subject to our income tax. It was said in *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 80–81, "It [income] imports an actual gain. It is based upon the practical conception that additional property has come to the taxpayer out of which some contribution is exacted and can be paid for the support of government. Income indicates increase of wealth in hand out of which

money may be taken to satisfy the enforced pecuniary contributions levied to help bear the public expenses." See *Brown* v. *Commissioner of Corporations & Taxation,* 242 Mass. 242, 244; *Lapham* v. *Tax Commissioner,* 244 Mass. 40, 44; *Bryant* v. *Commissioner of Corporations & Taxation,* 291 Mass. 498, 501; *Nichols* v. *Commissioner of Corporations & Taxation,* 314 Mass. 285, 304. Adopting, as we must, the standards furnished by these decisions, we hold on the facts on this record that the gifts of the coupons did not result either actually or constructively in the receipt by the taxpayer of any income.

Abatements must be granted in the sums of $227.36 and $191.89, respectively, with costs against the commissioner. G. L. (Ter. Ed.) c. 58A, § 13.   St. 1939, c. 366, § 1.

*So ordered.*